George C. **LEGRAND**, Appellant,

v.

**UNITED STATES**, Appellee.

**Nos. 87–924, 87–1440.**

District of Columbia Court of Appeals.

Argued Jan. 10, 1989.
Decided Feb. 23, 1990.

Stuart Fisk Johnson, appointed by the court, for appellant.

Roberto Iraola, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Helen M. Bollwerk, and Michael W. Farrell, Asst. U.S. Attys., Washington, D.C., at the time the brief was filed, were on the brief, for appellee.

Before ROGERS, Chief Judge, and BELSON and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

The troubling question presented by this case is whether Appellant George C. Le-

grand was sufficiently apprised of the consequences of his 1976 plea of not guilty by reason of insanity (NGI) where, as a result of that plea and the subsequent adjudication based on it, he has been deprived of his liberty for a period substantially in excess of the maximum term of incarceration for the underlying offense. The case is further complicated by the unavailability of a transcript of the original proceeding and the obvious difficulties in reconstructing what occurred on the basis of the recollections of the participants a decade after the fact. We hold that although the original trial judge's explanation of the consequences of the plea, as reconstructed, was not sufficiently thorough, Legrand has not sustained his burden of demonstrating manifest injustice, because his attorney had fully consulted with him with respect to the alternatives available to him and the considerations and risks incident to each. Accordingly, we affirm the denial of Legrand's motions to withdraw his plea and to vacate the NGI adjudication.

I

On June 30, 1976, Legrand was indicted on a charge of assault with a dangerous weapon.[1] On October 14, 1976, in a non-jury trial before Judge Tim Murphy on stipulated facts, Legrand entered a plea of not guilty by reason of insanity and was so adjudicated in accordance with his plea. Legrand was committed to the custody of St. Elizabeths Hospital (the Hospital) for an indeterminate period of confinement pursuant to § 24–301(d)(1). On December 3, 1976, at a *"Bolton"* [2] hearing convened pursuant to § 24–301(d)(2), Legrand failed to establish that, if released, he would not pose a danger to himself or others, and the court ordered that he remain committed. Although the maximum penalty which could have been imposed for the underlying offense was imprisonment for no less than forty months *and no more than ten years*,

§§ 22–502, 24–203(a), Legrand remains under commitment thirteen years after his trial.

On June 11, 1985, after a number of unsuccessful earlier attempts to secure his conditional release from the Hospital, Legrand filed a motion requesting the court to allow him to withdraw his plea of NGI, to vacate his commitment pursuant to that plea, and to order his unconditional release pursuant to § 24–301(k). The gravamen of his submission was that the proceedings before Judge Murphy had been fatally flawed because

> neither his former counsel, nor the prosecutor, nor the court advised him, nor did he learn from other sources before or at the hearing held on October 14, 1976, that one of the consequences of his insanity acquittal is that he legally could then be made to remain committed to Saint Elizabeths Hospital, on its criminal side, for the rest of his life, or certainly for a period of years in excess of the maximum term of incarceration allowed by statute for the criminal offense for which he had been indicted.

Some seven years before Legrand filed this motion, the court reporter who had apparently been assigned to the bench trial had left the Superior Court. Her notes were nowhere to be found, and the proceedings had not been tape-recorded. In July 1986, a hearing was held before Judge Luke C. Moore [3] for the purpose of reconstructing the 1976 proceedings before Judge Murphy and resolving the issues raised by Legrand's motion. Judge Moore heard testimony from all of the principal participants at the 1976 bench trial, including Legrand, Judge Murphy, Judge Herbert Dixon (who had been Legrand's court-appointed counsel at the time of the bench trial, which took place before Judge Dixon was named to the bench), the prosecutor, the psychiatric expert and the courtroom clerk. Judge Moore thereafter made com-

---

1. *See* D.C.Code § 22–502 (1989). Unless otherwise noted, all references to statutory sections are to the District of Columbia Code.

2. *Bolton v. Harris,* 130 U.S.App.D.C. 1, 395 F.2d 642 (1968).

3. At the time of the hearing, Judge Murphy had left the bench and accepted an assignment with the Department of Justice. He has since resumed his duties as a senior judge.

prehensive findings as to what had occurred in the stipulated bench trial before Judge Murphy, settled and approved a Statement of Proceedings and Evidence with respect thereto, and denied all of Legrand's motions on the merits.[4]

With respect to the feasibility of reconstructing what had occurred at the bench trial, Judge Moore noted that

> since the Court was not the presiding judge at the trial in October 1976, and further, since the memories of the principal participating actors were diminished by the passage of time, the Court's task in reconstructing the statement was rendered somewhat more challenging but not insurmountable.

He concluded that, notwithstanding the principal actors' "paucity of recollection of specific details," their testimony concerning their general practices and procedures in stipulated NGI cases enabled him (Judge Moore) to accomplish his task in accordance with the requisite standards, as prescribed in *Cole v. United States*, 478 A.2d 277 (D.C.1984) and *Cobb v. Standard Drug Co.*, 453 A.2d 110 (D.C.1982). The judge also found that Legrand's "understandable lack of recall" of some significant details of the proceedings, together with contradictions in some of his testimony and his bias, reflected negatively on Legrand's credibility.

With respect to the issue of what Judge Murphy had told Legrand during the 1976 hearing as to his potential loss of liberty, Judge Moore found that

Judge Murphy explained to the defendant/acquittee, if the doctor's testimony "was right" as to Mr. Legrand's mental illness, that, as a practical matter, Mr. Legrand would be found not guilty by reason of insanity. Further, the Court found that Judge Murphy explained that defendant/acquittee would be sent to St. Elizabeths Hospital for 50 days, and that *it would be up to the doctors at the hospital to decide whether Mr. Legrand stayed, after that, for a long or short time.*

In making this finding, the Court rejected the defendant/acquittee's selective memory concerning [these] matters, given his understandable inability, after so long a time, to recall other significant events [5] that transpired at the proceeding.

In contrast to defendant/acquittee's sometimes equivocal and contradicted testimony at the hearing, Judge Murphy's testimony was firm as to his unvaried pattern and practice in a large volume of NGI proceedings and his adherence to that practice with the defendant/acquittee at the trial concerning this matter.

(Emphasis added).

With respect to Legrand's allegations that Judge Dixon had failed to advise him properly of his rights,[6] Judge Moore agreed with a finding by Judge Murphy that Judge Dixon was a "first rate lawyer" and "very meticulous." Noting that Judge Dixon, although unable to recollect all that transpired at the trial, "had a vivid recall of

---

**4.** After receiving submissions from the parties, Judge Moore initially settled and approved a Statement of Proceedings and Evidence in April 1987. He denied Legrand's motions on the merits later in the same year. Legrand then filed this appeal and, after considering the briefs and hearing oral argument, this court remanded the record to Judge Moore for more detailed findings (which the judge had indicated earlier that he was proposing to make). On July 14, 1989, Judge Moore issued two comprehensive memorandum opinions which explicated in some detail his rulings with respect to the Statement of Proceedings and Evidence and with respect to Legrand's substantive motions.

**5.** For example, Legrand testified that he believed that the same prosecutor represented the government at the 1976 trial and the 1987 proceedings. In fact, the 1976 prosecutor was black, the 1987 prosecutor was white.

**6.** Legrand testified that Judge Dixon "advised me that I would do only 50 days, and that was the day of the not guilty by reason of insanity.... He said we—I would come back to court in 50 days and have a hearing and be released is what he told me." It is evident from Judge Moore's decision that he did not credit the assertion that Judge Dixon in effect guaranteed Legrand's release after 50 days when the offense with which he was charged carried a maximum penalty of ten years. The allegation that Judge Dixon did so is the crux of Legrand's complaint with his attorney.

his representation of Mr. Legrand," Judge Moore found that "counsel was studiously alert in defending Mr. Legrand's rights," and that Legrand had "failed to meet the standard enunciated in *Strickland v. Washington*, 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984)."

Judge Moore also found that "[Legrand's] contention nine years after his NGI trial amounts to post-trial second guessing." In conclusion, the judge held that

> after examining the stipulated NGI proceeding in totality, the preparation and the handling of Mr. Legrand's defense by counsel, the Court [concludes] that the trial was fundamentally just, and no miscarriage of justice was evident.

## II

On appeal, Legrand makes three principal contentions.[7] First, he alleges that he was denied the effective assistance of counsel in the trial court because Judge Dixon misled him as to how long he would be confined if he was adjudicated not guilty by reason of insanity. Second, he claims that he was denied his appellate rights because he was not provided with a transcript of the proceedings before Judge Murphy. Finally, he contends that even if this court accepts the Statement of Proceedings and Evidence as sufficient, Judge Moore's findings reveal that he was not adequately advised of the consequences of his NGI plea, a fundamental defect which, according to Legrand, resulted in a complete miscarriage of justice. We deal with each contention in turn.

### A. Ineffective assistance of counsel.

Legrand's contention that his counsel was ineffective need not detain us long. In *Strickland, supra,* the Supreme Court held that, in order to establish a claim of ineffective assistance, a defendant must show first, that counsel's representation fell below an objective standard of reasonableness, and second, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 687–96, 104 S.Ct. at 2064–69. Judge Moore's findings foreclose any notion that Judge Dixon's representation of Legrand was inadequate. These findings are supported by the evidence and are not clearly erroneous, and we therefore have no occasion to reach the question of prejudice.

### B. The lack of a transcript.

Superior Court Criminal Rule 36–I requires that all proceedings shall be simultaneously recorded verbatim by a court reporter or, in certain circumstances, by an electronic sound recording device. The reasons for this requirement are obvious; an appellate court should know what occurred at trial, rather than having to make do with the participants' best recollection.

In the present case, an attempt to reconstruct what transpired at a relatively routine stipulated trial ten years earlier, when the participants had no reason to expect that anybody would ever again ask them to remember it, was necessarily hazardous. Indeed, the recollections of two of the principal witnesses on whom Judge Moore relied most heavily—Judge Murphy and Judge Dixon—differ in some significant particulars.[8] That the witnesses were compelled to resort to their recollections of what they usually did to determine what they probably did on this occasion, and to assume that they did not vary their usual practice in Legrand's case, is an additional limitation on the accuracy of the product.

---

**7.** We have also considered Legrand's other claims which are not specifically discussed in this opinion, *e.g.* that Judge Moore's findings were clearly erroneous, and that reversal is required under this court's supervisory power, and we find them to be without merit.

**8.** Judge Dixon testified that it was Judge Murphy's practice to advise a defendant that his release would depend on his ability to show the court that he was no longer a danger to himself or others, and also that he could remain confined for a longer period than the maximum penalty prescribed for the offense. Judge Murphy testified that he would advise the defendant that he could be confined for a long time or for a short time, and that the doctors would decide. Judge Moore's findings were consistent with Judge Murphy's testimony.

In *United States v. Workcuff,* 137 U.S. App.D.C. 263, 422 F.2d 700 (1970) (*per curiam*), the court observed that

> "[r]ecollections and notes of trial counsel and of others are apt to be faulty and incomplete. Frequently, issues simply cannot even be seen—let alone assessed—without reading an accurate transcript."

*Id.* at 265, 422 F.2d at 702 (quoting Boskey, *The Right to Counsel in Appellate Proceedings,* 95 MINN.L.REV. 783, 793 (1961)). The court further stated that these problems are exacerbated when appellate counsel was not trial counsel, and that without a transcript the opportunity of appellate counsel to discover "plain errors or defects" is illusory. *Id.*

In *Cole v. United States, supra,* relying on *Workcuff* and other authorities, this court reversed the defendant's conviction of carrying a pistol without a license because no transcript of her trial was available, even though, according to the Statement of Proceedings and Evidence to which both counsel had agreed, "appellant admitted that she brought a pistol with her from Maryland ... and pointed it at her husband." 478 A.2d at 280. This court declined, in *Cole,* to adopt a rule that would render every failure to provide a complete transcript reversible error, but nevertheless made it clear that a meaningful assurance of accuracy would be required before a reconstructed Statement of Proceedings and Evidence would be deemed an adequate substitute for a transcript upon direct appeal. It is therefore questionable whether the Statement of Proceedings and Evidence in the present case would be sufficient, under *Cole,* to support affirmance of Legrand's NGI adjudication if this were a timely direct appeal from Judge Murphy's order.

What is before us, however, is not a direct appeal from that order. Rather, we have a collateral attack on the NGI adjudication which Legrand did not initiate until nine years after the fact.[9] If there had been a timely appeal, the transcript would probably still have been available. Moreover, if the judgment had been reversed following such an appeal, and if a new trial had been ordered, the government might still have been in a position to present its evidence. Whether the government could now reassemble its proof of an assault that allegedly occurred in May 1976 is surely dubious to say the least. By waiting so long to launch his collateral attack, Legrand has almost certainly made it exceedingly difficult and perhaps impossible for the government to retry him.[10]

■ This court has recognized that a substantially greater showing of injustice is necessary to obtain relief in a collateral proceeding than on direct appeal. *Gaston v. United States,* 535 A.2d 893, 896 (D.C. 1988). This proposition holds true for issues regarding transcripts. Although the State must furnish an indigent defendant with a free trial transcript for purposes of direct appeal, *see Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), its obligation to do so for purposes of a collateral proceeding is far less absolute. *See United States v. MacCollom,* 426 U.S. 317, 324–28, 96 S.Ct. 2086, 2091–92, 48 L.Ed.2d 666 (1976) (plurality opinion); *id.* at 329–30, 96 S.Ct. at 2093 (Blackmun, J., concurring in the judgment). Indeed, a defendant is entitled to a copy of a trial transcript for purposes of a collateral attack on his conviction only upon a showing of particularized need. *Lewis v. United States,* 605 F.2d 379, 380 (8th Cir.1979) (*per curiam*); *Morin v. United States,* 522

---

9. Legrand first made the allegation that he had been misled by his counsel in a letter to the court in 1982. This was six years after his stipulated trial.

10. As this court recently stated in *Ramsey v. United States,* 569 A.2d 142, 148, (D.C.1990), quoting *Desmond v. United States,* 333 F.2d 378, 381 (1st Cir.1964), "it will not do for a prisoner to wait [to file a collateral claim] until government witnesses have become unavailable, as by death, serious illness or absence from the country, or until the memory of available government witnesses has faded." We held in *Ramsey* that such delay will not justify the denial of a motion pursuant to § 23–110 without an evidentiary hearing; in the present case, however, Judge Moore held an evidentiary hearing.

F.2d 8, 9 (4th Cir.1975) (*per curiam*).[11] *See also Jenkins v. United States*, 548 A.2d 102, 104 (D.C.1988) (no constitutional right to appointment of counsel to pursue post-conviction relief).

■ Judge Moore made painstaking efforts in this case to reconstruct the stipulated bench trial. He concluded that the final product was sufficiently reliable to serve as a substitute for a full transcript. The proceedings before Judge Murphy in this case were brief—much less complex, for example, than those in *Cole*. The portion of the proceedings which is most important for present purposes involves the judge's explanation to Legrand of the potential consequences of an NGI plea. Even that is not easy to reconstruct, but it does not present the difficulties inherent in attempting to recreate an entire jury trial from the recollections of the participants. Moreover, this case turns in large part on the advice which Legrand received from Judge Dixon,[12] and a transcript would probably have provided no information at all on that subject.

To prevail in a collateral attack on the adjudication, as Legrand acknowledges, he must demonstrate a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). Under all of the circumstances, we conclude that Legrand has not carried this heavy burden with respect to the lack of availability of a trial transcript.

## C. The judge's advice to Legrand.

### (1) Sufficiency.

To agree to a finding of not guilty by reason of insanity is not a trivial thing.

This case graphically illustrates how serious the consequences of such a decision may be. If Legrand had been convicted of the charge against him, and if he had received the maximum sentence of forty months to ten years, he would have been eligible for parole in 1979. It is now 1990, and he still has not regained his freedom.

■ Under these circumstances, it is imperative for the judge who accepts a plea of not guilty by reason of insanity to ensure that the defendant understands fully and in some detail exactly what can happen to him, and for how long, if the plea is accepted and he is adjudicated accordingly. Many defendants who enter such pleas may well have a limited ability to comprehend the proceedings. This makes the task of the trial judge even more difficult. Nevertheless, since the defendant may lose his liberty for a very long time,[13] thoroughness and meticulousness are essential if the uninformed relinquishment of constitutionally protected liberty interests is to be avoided.

Superior Court Criminal Rule 11, which prescribes procedures for guilty pleas, does not apply directly to this case, but is instructive by analogy. Rule 11(c)(1) provides that before accepting a plea of guilty or *nolo contendere*, the judge must address the defendant personally in open court, inform him, among other things, of the maximum possible penalty provided by law, and determine that he understands it. This advice must be given even in misdemeanor cases, in which any potential loss of liberty is of relatively short duration. Legrand has been denied his liberty for

---

**11.** We cite the *MacCollom* line of authority not for the proposition that Legrand has not shown need, but rather to confirm that the defendant's rights in collateral proceedings differ from those which he enjoys on direct appeal even with respect to the availability of a free transcript.

**12.** Indeed, we conclude at pp. 795–796, *infra*, that Judge Moore's findings as to the discussions between Legrand and Judge Dixon are decisive with respect to the disposition of this case.

**13.** *See Jones v. United States*, 463 U.S. 354, 369, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694 (1983), holding that a defendant acquitted by reason of insanity may constitutionally be confined in a mental institution until he is no longer a danger to himself or others, even if the confinement is for a period longer than he could have been incarcerated if he had been convicted. *Cf. Humphrey v. Cady*, 405 U.S. 504, 510–11, 92 S.Ct. 1048, 1052–53, 31 L.Ed.2d 394 (1972).

thirteen years, and the end may not yet be in sight.

In *Gaston v. United States, supra,* this court reversed a conviction of a defendant who had entered a plea of guilty because she "was not advised of the most basic information, the amount of time she would have to serve under the mandatory minimum and the maximum possible sentence." 535 A.2d at 896. The court described the direct consequences of a plea, including its effect on the defendant's punishment, as one of the "core concerns" which the trial judge must address when conducting a Rule 11 inquiry. *Id.* at 895.

■ We think that Rule 11 analysis should apply by analogy in cases such as the present one, in which the defendant admits his factual guilt and asserts a defense of insanity. In *United States v. Brown,* 138 U.S.App.D.C. 398, 428 F.2d 1100 (1970) (*per curiam*), on which Legrand relies, Brown's counsel stipulated at trial that his client had committed all of the acts charged in the indictment, reserving for the trial court's determination only the question whether Brown was insane, as his counsel had contended. Brown then attacked his conviction on the ground that the trial court should not have accepted his stipulation without first addressing him personally, as required by Fed.R.Crim.P. 11. The court observed that, by its terms, Fed.R.Crim.P. 11 [14] was inapplicable to stipulations, but nevertheless reversed Brown's conviction. The court concluded that

> [t]he considerations which support the requirement of Rule 11 that the trial judge address the defendant personally are present in the limited circumstances of this case, those limited circumstances being the mental condition of the defendant and the stipulation of counsel admitting all of the acts charged. We therefore hold that, in the limited circumstances of this case, the trial judge here

should have addressed the defendant personally before accepting the stipulation. *Id.* at 400, 428 F.2d at 1102.

If the judge is required to address the defendant personally in an NGI case, and to assure himself that the defendant understands what rights he is giving up by a critical stipulation, then it follows that the judge must also satisfy himself in such a proceeding that the defendant meaningfully comprehends what may happen to him if he pleads not guilty by reason of insanity. As the court aptly explained in *People v. Vanley,* 41 Cal.App.3d 846, 856, 116 Cal. Rptr. 446, 453 (1974), in holding that Vanley was entitled to a detailed explanation of the consequences of an NGI plea:

> As a matter of common sense, any defendant who pleads guilty to a crime knows that some punishment will follow; similarly, a person charged with a prior conviction most likely knows that the purpose of the charge is to enhance punishment in some fashion. By contrast, a person who pleads *not* guilty by reason of insanity may figure that the plea is simply another way to "beat the rap." We can hardly impute to the average defendant enough legal sophistication to realize that the very evidence which establishes the truth of the plea, can also confine him in a state hospital for a minimum period of 90 days (Pen.Code, § 1026(a)) and that he can remain involuntarily committed at such hospital for the rest of his life....

*See also People v. Lomboy,* 116 Cal.App.3d 67, 69, 171 Cal.Rptr. 812, 813 (1981) (where defendant seeks to enter NGI plea, "advisement of the disparity ... of possible custodial consequences is essential to insure a defendant knows the true potential of such plea even though she may be generally aware 'some' institutionalization is possible"); *State v. Shegrud,* 131 Wis.2d 133, 135, 389 N.W.2d 7, 9 (1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 891, 93 L.Ed.2d 843 (1987).[15]

---

**14.** The federal rule is identical to ours in the respects relevant here.

**15.** In the somewhat comparable context of determining the proper course of action where the

trial judge has reason to question a defendant's sanity, this court has likewise stressed the judge's duty to conduct an inquiry designed to assure that the defendant has been fully informed of the alternatives available, compre-

■ In the present case, Judge Moore found that Judge Murphy advised Legrand that it would be up to the doctors at the Hospital to decide when he would be released, and that release could come in a short time or a long time. We do not think this advice sufficient; indeed, it was incorrect.[16] Legrand was entitled to be told that he would be eligible for release only if *the court*,[17] after receiving the views of the hospital authorities, found that he was no longer a danger to himself or others. He should also have been advised, in some readily understandable way, that if the court continued to consider him a danger to himself or others, then he would remain confined indefinitely. A passing reference to a "short time or a long time" did not in our view sufficiently apprise Legrand of what was at stake.

### (2) Manifest injustice.

■ As previously noted in our discussion of the lack of a transcript, Legrand acknowledges that he must demonstrate "a fundamental defect [in the proceedings]

which inherently results in a complete miscarriage of justice."[18] This burden is properly a heavy one, both in the interest of finality and because, in this case, it may be impossible as a practical matter for the government to reprosecute.[19]

In *Hicks v. United States*, 362 A.2d 111 (D.C.1976) (*per curiam*), the trial judge had failed to advise the defendant, who had entered a plea of guilty to prison breach, that any incarceration for that offense would have to be consecutive to the sentence then being served. *See* D.C.Code § 22–2601 (1989). In a collateral attack on his conviction, Hicks contended that as a result of this omission, he had not been adequately advised of the consequences of his plea. This court held that, although the trial judge should have advised Hicks of the requirement that the prison breach sentence be consecutive to the one he was serving at the time of his escape, failure to do so did not result in "manifest injustice" because the sentence imposed was not substantially in excess of what Hicks could

---

hends the consequences of failing to assert the insanity defense, and freely chooses to raise or waive it. *Frendak v. United States*, 408 A.2d 364, 380 (D.C.1979); *see also Briggs v. United States*, 525 A.2d 583, 591 (D.C.1987).

16. Judge Murphy testified that his Rule 11 inquiries, on which his NGI procedures were based, were very quick. In *United States v. Morrison*, Crim. No. 81133–75 (Super.Ct.D.C. 1986), *appeal pending*, No. 86–990, in which the sufficiency of Judge Murphy's advice to another defendant entering a plea of NGI was at issue, in collateral proceedings, the transcript revealed that Judge Murphy had told the defendant:

> You go to the hospital for 50 days. You come back and they recommend whether you stay there, be released, be an out-patient or in-patient. They come up with a recommendation. You might be there a long time, a short time. I don't know how long, that might be decided in a couple months.

Judge Burgess concluded that Judge Murphy had omitted some elements of the advice which Morrison should have received but that, under all of the circumstances, Morrison was not entitled to relief.

17. Under the provisions of § 24–301(e), an insanity acquittee is entitled to apply to the court for unconditional release if the superintendent of the hospital finds him eligible therefor, but his release will not be authorized if the government objects thereto unless the acquittee proves

to the satisfaction of the court that he will not in the reasonable future be dangerous to himself or others. This means, for practical purposes, that in most instances Legrand would need the agreement not only of the court but also of the doctors before he could be released.

Section 24–301(g) recognizes, however, that an acquittee is entitled to establish his eligibility for release by seeking a writ of habeas corpus. The decision as to whether a petition for such a writ should be granted must, of course, be made by the court, rather than by the superintendent. The ultimate decision as to the acquittee's release is thus entrusted to the judge.

18. Legrand correctly identifies this standard as applicable to proceedings in the nature of habeas corpus. He further notes, also correctly, that if the instant motion is viewed as analogous to a motion to withdraw a plea of guilty, he must establish that the relief sought is needed in order to correct a "manifest injustice." Super. Ct.Crim.R. 32(e).

19. We are constrained to note, however, that even if the government could not retry the case, Legrand has already been confined for a far longer period than he would have been imprisoned if convicted. His confinement at the Hospital has not, of course, been "punishment," but he has been denied his liberty all the same. If Legrand remains a danger to himself or others, civil commitment is available.

have expected.[20]

In *Smith v. United States*, 116 U.S.App. D.C. 404, 324 F.2d 436 (1963), the defendant sought to withdraw his plea of guilty to a narcotics offense on the ground that neither the judge[21] nor counsel nor anyone else had advised him that he would not be eligible for parole or probation. The court affirmed the trial judge's denial of the motion, stating that

> [t]he rule is that manifest injustice does not result from the plea of guilty following erroneous advice of counsel as to the penalty which could be imposed.

*Id.* at 408, 324 F.2d at 440.

*Hicks* and *Smith* are both readily distinguishable from the present case. The difference between the sentence Hicks knew he could receive and the one he actually did receive is not nearly as great as the contrast between "a short time or a long time" and Legrand's potential confinement for life. *Smith* dealt with improper advice of counsel rather than by the judge, which present different issues, although the resulting injustice—an uninformed waiver of rights—appears to be the same, irrespective of who has misled or failed adequately to advise the defendant. Nevertheless, *Hicks* and *Smith* suggest that a plea will not be readily set aside on collateral attack in a case of this kind unless the circumstances are so extreme that they result in a complete miscarriage of justice.

In the present case, Judge Dixon testified that he discussed Legrand's options with him in some detail. He advised Legrand that if Legrand was confident that

he could follow the regimen prescribed by the doctors and make a speedy recovery, it would be advisable to plead not guilty by reason of insanity, but that otherwise, the best course of action might be to go to trial. On cross-examination, Judge Dixon testified that he recollected that he "would have" told Legrand that, if he took the NGI alternative, he could be confined for a period longer than the maximum penalty for this offense. Judge Moore, who heard the witnesses, concluded that Judge Dixon was "studiously alert" in defending Legrand's rights, and that "the decision to raise an NGI defense was a reasoned and informed defense strategy." These findings are not clearly erroneous[22] and are binding on us.

Judge Moore's findings as to Judge Dixon's advice place the somewhat constricted explanation of the consequences of an NGI adjudication which Legrand received at the bench trial in a somewhat different light. If Legrand discussed the legal situation with Judge Dixon thoroughly, as Judge Moore found that he did, then Judge Murphy's advice that he could be confined for "a long time" would simply reaffirm to Legrand what he had heard from his own counsel. In any event, given that finding, the incompleteness of the trial judge's advice does not rise to the level of manifest injustice, because Legrand was not significantly prejudiced by it. *Cf. Henderson v. Morgan*, 426 U.S. 637, 646–47, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976) (suggesting, for purposes of collateral attack on guilty plea, that requirement that defen-

---

**20.** The court said:

> At the time he entered his plea, appellant conceded through his attorney that he understood the maximum penalty he faced was five years. The penalty he in fact received was one to three years consecutive to the prior sentence, so that the total time of imprisonment appellant must serve (adding the sentence imposed for prison breach to the remainder of appellant's sentence for assault) does not substantially exceed the maximum appellant was aware he might be required to serve. Under these circumstances, the trial court did not err in failing to find manifest injustice sufficient to warrant vacating the judgment and permitting the withdrawal of the plea.

362 A.2d at 114 (footnote omitted).

**21.** At the time of his plea, Rule 11 of the Federal Rules of Criminal Procedure did not require that the court advise the defendant as to maximum or mandatory minimum penalties.

**22.** In his brief on appeal, Legrand discusses a number of alleged inconsistencies in Judge Dixon's account, and speculates that as a new judge, Judge Dixon may have been reluctant to criticize Judge Murphy. We cannot, however, second-guess Judge Moore on issues as to the credibility of witnesses who testified before him.

dant be informed of critical elements of offense may be satisfied by "representation by defense counsel that the nature of the offense has been explained to the accused"). It therefore does not warrant the setting aside of the plea or commitment on collateral attack. Accordingly, the judgment appealed from must be and it is hereby

*Affirmed.*