Taurus M. OUTLAW, Appellant,

v.

UNITED STATES, Appellee.

Nos. 01–CM–648, 01–CO–660.

District of Columbia Court of Appeals.

Argued March 25, 2004.

Decided July 15, 2004.

the alternative, that his probation revocation should be vacated because a substantial portion of the revocation hearing transcript is missing. We are not persuaded by appellant's arguments for reversal of either his conviction or the order revoking his probation.

Giovanna Shay, Public Defender Service, with whom James W. Klein and Timothy P. O'Toole, Public Defender Service, were on the brief, for appellant.

Rozella A. Oliver, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, and Deborah Connor, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Taurus Outlaw appeals his conviction on two counts of misdemeanor sexual abuse in violation of D.C.Code § 22–4106 (1981), as well as the revocation of his probation in an older case in which he had been convicted of unauthorized use of a motor vehicle (UUV) and simple assault. Outlaw presents three issues in his appeal: (1) that the misdemeanor sexual abuse convictions should be reversed because the trial judge impermissibly considered the complainant's capacity to consent; (2) that the order revoking his probation should be reversed because the probation revocation judge had an improper *ex parte* conversation with the judge who had tried the misdemeanor sex abuse case; and (3) in

## I.

Outlaw met Nina Gray, the complainant, as she exited the Takoma Park Metro station on her way home from work. Outlaw and Gray had previously dated each other and had a child in common. Outlaw drove Gray to Rock Creek Park where they had sexual intercourse, then drove her to her mother's house, where Gray lived. Ramona Long, Gray's mother, noticed a wet spot on the back of Gray's pants and, after asking what happened, telephoned the police. During her conversation with the police, she ascertained that her daughter said "no" to Outlaw's sexual advances. Gray led the police to the location in the park where the events took place before being taken to D.C. General Hospital for examination.

During the non-jury trial, Gray testified that she resisted Outlaw in the car, that she tried to escape but Outlaw locked all the doors, and that she repeatedly told Outlaw to stop what he was doing to her.[1] Gray is a former special education student who, at the time the events occurred, worked for an agency that employed "special education people." Outlaw called Ms. Long to testify, and she admitted that she never liked the way he treated her daughter. She stated that Outlaw called to speak to Gray earlier that day and Long told him that she was at work. Judge Hiram E. Puig–Lugo found appellant

---

1. One count of sexual abuse involved touching the complainant's breast, the other involved subsequent sexual intercourse.

guilty of both counts of sexual abuse, and imposed consecutive sentences of 180 days on each count, with execution suspended except for time served.[2]

Four days later, Outlaw appeared before Judge Reggie A. Walton for a probation revocation hearing stemming from Outlaw's 1992 convictions for UUV and simple assault. Judge Walton had originally suspended imposition of sentence and placed Outlaw on probation for five years for those convictions. After a series of changes in his probation status due to matters not relevant here, Outlaw's probation was revoked in 1998 and he was re-sentenced, with imposition of the sentence again suspended, and given another three years of probation. It was during this final three-year period that Outlaw committed the acts that gave rise to the misdemeanor sex abuse case.

There is no transcript of the early part of the revocation hearing. During a later part of the hearing, according to the partial transcript, Judge Walton engaged in a telephone conversation from the bench with the misdemeanor trial judge and discussed the proceedings in Outlaw's recent sex abuse case. According to the partial transcript, Judge Walton also heard from Outlaw, Outlaw's fiancée, his attorney, and the government before deciding to revoke Outlaw's probation and order execution of the sentence originally imposed.[3]

## II.

■ Outlaw contends that the trial judge erred because he considered the sex abuse complainant's mental competency to consent to sexual acts in reaching its ver-

dict, even though the issue of her competency was not raised or litigated at trial. Because the record does not support the argument that the trial judge made or relied upon a competency determination, we hold that the trial judge did not err.

There is no contention on appeal that the trial record fails to support the trial judge's finding that Gray did not consent to Outlaw's sexual advances. The trial judge expressly found that Gray "was not making ... up" her testimony that she repeatedly objected to Outlaw's actions throughout their encounter. Neither party raised the issue of Gray's competency at trial. In response to an objection by Outlaw's counsel to the prosecution's closing argument, which defense counsel took to refer to capacity to consent, the court stated: "Nobody raised the issue of competence from either side and I will not take [the prosecution's] comment in that regard." In reaching his finding of guilt, the trial judge observed:

> Now, I saw Nina [Gray], had the opportunity to evaluate her credibility, her ability to recall. She is somebody with some limitations and she seems to particularly have trouble with time frames and when something happened or how long it happened, but she was very clear as to what happened that day. And, frankly, I have no doubt that you just go get her because you know you can control her. She has limitations and you used those limitations to your advantage.

This observation is consistent with the court's making a determination concerning Gray's credibility and memory, but does not amount to a competency determina-

---

2. According to Judge Puig–Lugo's calculations, Outlaw had already been detained for approximately 130 days at the time of sentencing in that case.

3. Judge Walton ordered execution of the original sentence of twenty months to five years on the UUV count and one year on the simple assault, with the sentences to run consecutive to each other and any other sentence.

tion. In the context of the record of the trial, the reference to Gray's "limitations" cannot be viewed as a reference to capacity to consent. The trial judge made detailed factual findings in reaching his holding, none of which dealt with Gray's competency in that regard or any other. The reference to Gray's "limitations" served to illustrate the nature of Outlaw's conduct, but did not constitute a finding regarding Gray's competency.

■ Outlaw states that he learned through the telephone conversation between Judge Puig–Lugo and Judge Walton during the probation revocation hearing that Judge Puig–Lugo had made a competency determination. That conversation, referred to by Judge Walton in the partial transcript of the electronically recorded revocation hearing, provides at best limited support for appellant's challenge to the trial judge's findings and conclusions. This is in large part because, as discussed in more detail below, appellant has failed to undertake to have a statement of proceedings and evidence relating to the probation revocation hearing prepared pursuant to Rule 10 of the rules of this court. As a result, there is before this court no complete transcript or other statement of what was said at the revocation hearing for our consideration of either the appeal of the order of revocation or the appeal of the misdemeanor convictions. Moreover, the partial and never completed record of the revocation hearing is, in any event, not a part of the record on appeal of the direct appeal of the misdemeanor convictions. The fact that the two appeals were consolidated does not necessarily make the record on appeal in one case a part of the record on appeal of the other. This court can, however, take notice of its own records and "of other cases including the same subject matter or questions of a related nature between the same parties." *Fletcher v. Evening Star Newspaper Co.,* 77 U.S.App. D.C. 99, 133 F.2d 395 (citations omitted), *cert. denied,* 319 U.S. 755, 63 S.Ct. 1163, 87 L.Ed. 1708 (1943); *accord Washington v. United States,* 760 A.2d 187, 194 (D.C.2000); *Coleman v. Burnett,* 155 U.S.App. D.C. 302, 313, 477 F.2d 1187, 1198 (1973). We can, for example, take notice of such ascertainable facts as the disposition of related appeals, guilty pleas, and revocations of probation.[4]

■ We need not undertake, however, to decide whether the incomplete transcript of the revocation hearing is fully and properly before us for all purposes in Outlaw's direct appeal.[5] Assuming that it is, our consideration of it would not lead us to reverse the convictions. The partial transcript indicates that during that hearing, Outlaw's fiancée suggested that Outlaw's encounter with Gray was consensual. It also sets forth that Judge Walton gave the following summary of his conversation with Judge Puig–Lugo—that he

> ... found it was not consensual because he said that even if one could assume that there was some degree of consent, which he found it was not, that this young lady has, he said, the mentality of a 12–year–old, and he should understand that he should not have had sex with her.

Read with the trial judge's findings at trial, this statement, to the extent it can be considered an accurate reflection of the trial judge's thinking at a time *after* the conclusion of the sex abuse trial, echoes

---

4. *See* CHARLES ALAN WRIGHT AND KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5106 and n. 31 (1977 & Supp.2004).

5. We note that the government did not object on this basis to appellant's use of the partial transcript of the revocation hearing in connection with the direct appeal.

the trial judge's conclusion that Outlaw was taking advantage of Gray. While a reference by the trial judge to the "mentality of a 12–year–old" was reported by Judge Walton, it is impossible to learn from his summary report the specific context in which the trial judge was said to have made that reference and what else might have been said by the trial judge that explained its meaning. Moreover, "there is a presumption that a trial judge, in deciding a case, will disregard any inadmissible evidence and any improper argument." *Singletary v. United States,* 519 A.2d 701, 702 (D.C.1987). The record contains insufficient evidence to overcome this presumption. In light of the record before us, Judge Puig–Lugo's findings and conclusions leading to the judgments of guilty of the two related misdemeanor sexual abuse charges are affirmed.

### III.

■ Outlaw does not contend that Judge Walton lacked adequate grounds to revoke his probation and order execution of the sentence previously imposed. Rather, he argues that the order of revocation should be reversed because, during the probation revocation hearing, Judge Walton received certain information in the course of a telephone conversation with Judge Puig–Lugo, the trial judge in the misdemeanor sex abuse case.[6] Outlaw contends that both the conversation itself and its *ex parte* discussion of prejudicial information were improper and that the conversation violated his right to confront witnesses against him, thereby requiring reversal.

Outlaw cannot prevail on this appeal because of his failure even to attempt to secure a statement of proceedings and evidence to complete the record of what transpired at the probation revocation hearing conducted by Judge Walton. D.C.App. R. 10(d).[7] For the same reason, appellant cannot prevail on his challenge to revocation of his probation on the ground that a portion of the revocation proceeding was not recorded and transcribed.

■ "[W]here there is an incomplete transcript and appellant claims that a specific trial error merits reversal, this court will not consider the substance of appellant's representations about the alleged error, unless the transcript supports those representations or the appellant has made efforts to supplement the record pursuant to Rule 10(j)." *Cole v. United States,* 478 A.2d 277, 284 (D.C.1984) (citations omitted). We clarified in *Cole* that "[w]hen an appellant refuses to make reasonable efforts to prepare a 10(j) statement from the best available means, this court will not entertain a claim that the record on appeal is insufficient to permit meaningful review." *Id.* (citations omitted).

These strictures are consistent with our longstanding rule that appellant bears the burden of presenting this court with a record sufficient to show that error occurred at trial. *See Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982). When the record is incomplete, the appellant can seek permission of this court to

---

**6.** Outlaw suggests that Judge Walton's probation revocation order may have been illegal because Outlaw might already have served more than the maximum probationary period allowed. Outlaw's briefs provide neither supporting argument nor relevant citations to the record before this court and therefore we need not consider it. *See Bardoff v. United States,* 628 A.2d 86, 90 n. 8 (D.C.1993) (citing D.C.App. R. 28(a)(5)).

**7.** This rule, originally promulgated in 1985, was in effect as Rule 10(j) in 2001 when the revocation hearing was held. It has since been replaced by Rule 10(d) (2004).

prepare a statement of proceedings and evidence to supplement the record when a portion of the transcript is missing. D.C.App. R. 10(d). Once a statement is drafted, appellee may file objections or amendments and then the trial judge either settles and approves the statement or states reasons for his or her disapproval. In the event of disapproval, the trial judge may authorize submission of a revised statement.

Appellant argues that the preparation of such a statement was unnecessary because the available transcript shows that the probation revocation judge engaged in an improper *ex parte* communication with the trial judge and thus violated appellant's right to confront the witness against him. We disagree that it was unnecessary to follow the Rule 10 procedure. The absence of the portions of the transcript preceding the telephone call from the bench make it impossible to know what led to the call. We do not know whether the call was suggested by counsel for Outlaw or by the government when the trial judge inquired about the recent trial and sentencing. Nor do we know whether, if it was suggested by the government, counsel for Outlaw acquiesced in the suggestion. If the probation judge initiated the call on his own, it would be important to know whether counsel for Outlaw supported the idea, objected, or failed to object to it. Without this information in the record before us, it cannot be said that the available but incomplete transcript supports appellant's claim that he was prejudiced by an improper *ex parte* conversation.

Appellant relies on *Belton v. United States,* 581 A.2d 1205, 1212 (D.C.1990) for the proposition that he was not required to object to the conduct of the trial judge "just before a discretionary virtually non-reviewable act" takes place. The circumstances here differ markedly from those in *Belton,* where the defendant and his counsel were taken by surprise during the sentencing hearing by the judge's revelation, during a confrontational exchange between the judge and the allocuting defendant, that the judge had spoken personally about the defendant at an earlier time with some of the women who lived in the immediate area where defendant had been committing crimes. The women had reported to the judge that the defendant was making their lives miserable. Here, the trial judge's demeanor does not appear, from the partial transcript, to have been confrontational, the fact that appellant had recently been convicted and sentenced for misdemeanor sex abuse came as no surprise to appellant and his counsel, and the telephone conversation took place during the revocation hearing itself. The obligation to object is not so easily lifted that one can readily conclude from the incomplete transcript that there was no such obligation in this instance. *See In re W.T.L.,* 656 A.2d 1123, 1129 n. 8 (D.C.1995) (when trial judge elicits *ex parte* information, it does not necessarily follow that "an affected party automatically has been deprived of the opportunity to effectively challenge it"). But, in any event, the absence of a statement of proceedings and evidence setting forth what transpired at the hearing before the transcript record of the hearing begins makes it impossible for appellant to establish that under *Belton* he was not required to object.

Appellant also argues that it would have been futile to attempt to prepare a Rule 10 statement of the revocation proceedings. He notes, among other things, that the revocation judge has left Superior Court and is now a judge of the United States District Court for the District of Columbia, and that the actual statements of Judge Puig–Lugo would not be part of the record of the revocation proceeding in any event.

Outlaw suggests that this situation is analogous to a "situation in which the trial judge has 'no independent recollection which enabled him to reconcile the conflicting versions' of the parties' statements of the proceedings" pursuant to Rule 10(d). Appellant's Brief at 24 (quoting *Cross v. District of Columbia*, 292 A.2d 794, 795 (D.C.1972)). We think the appropriate analogy is to *Legrand v. United States*, 570 A.2d 786 (D.C.1990). In *Legrand*, when the trial judge was unavailable to preside over a Rule 10(d) proceeding (because he had accepted a position with the Department of Justice and therefore was no longer a sitting judge in the Superior Court) a new judge was assigned to conduct the proceedings. The assigned judge was then able to take the trial judge's testimony regarding the missing portions of the transcript, along with the testimony of other participants at trial, before settling and approving the statement and submitting it as part of the record on appeal. Given this example of the appropriate course of action, we see no reason to deviate in this case from the explicit requirements of Rule 10(d). Accordingly, Outlaw cannot prevail in this appeal on the record before us.[8]

This brings us to appellant's request that we exercise our authority under D.C.Code § 17–306 (2001) to take such action "as is just in the circumstances." Specifically, appellant asks that we vacate the revocation of his probation and termi-

nate that probation rather than to remand for further proceedings under Rule 10(d).[9] Having considered all relevant circumstances, we decline to do so.[10] Accordingly, the judgment of conviction and order revoking probation are affirmed.

*So ordered.*

---

**8.** Outlaw also argues that his failure to comply with Rule 10(d) should be excused on the ground that his sentence is due to expire soon, and any further delay "could easily defeat the primary purpose of this appeal." Appellant's Brief at 24. Rule 10(d) does not provide for an exception on this ground and we decline to create one here.

**9.** In support of his request, appellant points out that Judge Walton is no longer on the Superior Court; appellant by now has nearly

served, or has served, according to appellant's counsel, five years of "probation"; and appellant may be released from a halfway house by the time this court can rule.

**10.** In the absence of a full transcript or statement of proceedings and evidence, we do not reach questions raised by appellant concerning alleged impropriety in the conversation between the probation revocation judge and the trial judge.