Carl MORRISON, Appellant,

v.

UNITED STATES, Appellee.

No. 86–990.

District of Columbia Court of Appeals.

Argued Nov. 16, 1989.
Decided Aug. 16, 1990.

Nina Kraut, Washington, D.C., appointed by this court, for appellant.

Joyce J. Bang, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas J. Tourish, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and NEWMAN and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Appellant Carl Morrison appeals from the denial of his motion to vacate his plea of not guilty by reason of insanity and for unconditional release pursuant to D.C.Code § 24–301(k) (1989 Repl.). He contends that his plea of not guilty by reason of insanity (NGI) should be vacated and his commitment to St. Elizabeths Hospital set aside because the trial judge failed to address him personally regarding the voluntariness of his plea and to advise him of the direct consequences of his NGI plea in violation of Super.Ct.Crim.R. 11. Therefore, he maintains that he did not make a voluntary and knowing waiver of his rights. Further, appellant contends that he received ineffective assistance of counsel because his trial attorney failed to advise him of his

right to appeal the NGI judgment. Finding that appellant failed to demonstrate manifest injustice requiring vacation of his plea, or that he was denied the effective assistance of counsel, we affirm.

## I.

■ **Standard for Withdrawal of NGI Plea.** At a stipulated trial on March 29, 1976, it was established that appellant struck and threatened two police officers on August 26, 1975, but that his conduct was a product of his mental illness, paranoid schizophrenia. The trial judge found appellant to be not guilty by reason of insanity of the charges, and following a *Bolton*[1] hearing (D.C.Code § 24–301(d)), ordered that appellant be committed to St. Elizabeths Hospital. Thereafter, appellant filed numerous motions for unconditional release pursuant to D.C.Code § 24–301(k) and now appeals from the denial of his August 6, 1985 motion.[2]

D.C.Code § 24–301(k)(1) (1989 Repl.) provides that

A person in custody ..., pursuant to the provisions of this section, claiming the right to be released from custody, the right to any change in the conditions of his release, or other relief concerning his custody, may move the court having jurisdiction to order his release, to release him from custody, to change the conditions of his release, or to grant other relief.

The motions judge ruled, and the government agrees, that appellant may properly raise his claims challenging the NGI verdict by motion under § 24–301(k).[3] *See Legrand v. United States*, 570 A.2d 786 (D.C.1990); *Sanderlin v. United States*, 254 U.S.App.D.C. 18, 24, 794 F.2d 727, 733 (1986). The language of the statute is sufficiently broad, referring to "other relief". Although, in context, this phrase might be viewed as referring to relief based on a valid initial NGI verdict, we see no reason to so confine the language. Further, D.C. Code § 24–301(k)(7) provides that to the extent other vehicles exist, such as habeas corpus,[4] a motion under § 24–301(k) is to be pursued first. In addition, D.C.Code § 23–110 is inapplicable since an NGI defendant is not considered to be under "sentence". *See O'Beirne v. Overholser*, 109 U.S.App.D.C. 279, 282, 287 F.2d 133, 136 (1960) (an accused person being confined in a hospital is not a "prisoner" nor under "sentence" for purposes of filing a motion under 28 U.S.C. § 2255). Accordingly, we hold that appellant properly challenges his NGI judgment under § 24–301(k)(1).

Thus, the principal issue is the standard to be applied in deciding whether trial judge error requires granting appellant the relief he seeks.[5] Appellant contends that because his trial attorney failed to advise him of his right to appeal the NGI judgment, his position is analogous to that of a criminal defendant who is seeking to withdraw a guilty plea prior to sentencing. The motions judge, after finding that appellant had failed to demonstrate ineffective assistance of counsel, disagreed and applied a manifest injustice standard.

1. *Bolton v. Harris*, 130 U.S.App.D.C. 1, 10, 395 F.2d 642, 651 (1968).

2. Appellant originally asked this court to stay his appeal pending the outcome of his February 12, 1988 motion to vacate his insanity plea and for unconditional release. In that motion, appellant claimed that certain stenographic notes from 1975 proceedings, which were essential to the resolution of his August 1985 section 301(k) motion, had been destroyed by the court reporter. The 1988 motion was denied, as was appellant's motion for reconsideration. Appellant did not appeal either denial of his 1988 motion.

3. We do not address whether the availability of D.C.Code § 24–301(k) is dependent upon whether or not the defendant, as opposed to the trial

judge, interposes an insanity defense. Although the trial judge discussed interposing the insanity defense, he did not do so. *See United States v. Wright*, 167 U.S.App.D.C. 309, 511 F.2d 1311 (1975).

4. D.C.Code § 16–1901 (1989 Repl.).

5. In our recent decision in *Legrand, supra,* the defendant acknowledged on appeal that he had to demonstrate a fundamental defect in the proceedings which inherently results in a complete miscarriage of justice. 570 A.2d at 796 n. 18. Hence, the issue was not before the court.

■ Appellant's contention that he was denied the effective assistance of counsel is meritless.[6] The motions judge found "no persuasive evidence that [counsel's] advice was outside the range of competence demanded of attorneys in criminal cases." The judge noted that appellant was unable to recall much of what had happened ten years ago and that his memory was faulty, as evidenced by his claim that the trial judge promised appellant he could be released in one year, which was unsupported by the transcript of the proceedings; that his defense attorney had twice advised him not to plead guilty by reason of insanity and had visited appellant at St. Elizabeths Hospital for at least 35 minutes prior to the March 1976 hearing, at which he entered his NGI plea, and had met with appellant before and after his appearances before the trial judge; and that his attorney had represented him in accordance with appellant's wishes. These findings are supported by the record and are not clearly erroneous. Hence we need not reach the issue of prejudice.

■ Appellant's contention that the manifest injustice standard should not be applied to a request to withdraw a NGI plea is likewise unpersuasive. Post-sentence attacks on guilty pleas are subject to the "manifest injustice" standard of Super.Ct. Crim.R. 32(e), and the appropriate procedure for relief from a guilty plea is a motion to withdraw a plea under Rule 32(e) or D.C.Code § 23–110. *Carmichael v. United States,* 479 A.2d 325, 327 (D.C. 1984) (Rule 32(e) motion) (citing *Willis v. United States,* 468 A.2d 1320, 1322 (D.C. 1983)); *McClurkin v. United States,* 472 A.2d 1348, 1352 (D.C.1984); *Lorimer v. United States,* 425 A.2d 1306, 1308–09 (D.C.1981) (per curiam). *See also United States v. Watson,* 179 U.S.App.D.C. 103, 108, 548 F.2d 1058, 1063 (1977) (request for relief under 28 U.S.C. § 2255 subject to manifest injustice standard of Fed.R. Crim.P. 32(d)). Although "as a practical matter virtually every possible avenue of appeal is waived by a guilty plea, *Bettis v. United States,* 325 A.2d 190, 194 (D.C. 1974), a defendant who is sentenced after pleading guilty may later attack the voluntary and intelligent character of the plea." *McClurkin, supra,* 472 A.2d at 1352. The motions judge, observing that the considerations which support the requirement of Rule 11 are present when a defendant enters an NGI plea and his counsel stipulates to all the acts charged, concluded that appellant's collateral attack of his NGI plea is analogous to the appeal by a defendant who has pleaded guilty, who may attack the voluntary and intelligent character of his plea and applied the manifest injustice standard.[7]

---

**6.** To prove ineffective assistance of counsel, appellant must establish that counsel's representation fell below the "reasonable professional assistance" standard established in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Judicial scrutiny of counsel's performance is highly deferential and counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. *Id.* at 689, 690, 104 S.Ct. at 2065, 2065–66. Where a criminal appellant seeks to collaterally attack a plea by asserting that the plea resulted from ineffective assistance of counsel, he must establish that the "plea was motivated by advice received from counsel which fell short of the range of competence demanded of attorneys in criminal cases." *Gibson v. United States,* 388 A.2d 1214, 1215 (1978) (citing *McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970)). In addition, appellant must show that his defense was prejudiced by the deficient performance of his counsel. *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064.

**7.** The motions judge observed that one difference between the manifest injustice standard and that expressed in *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962) ("fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure"), is that the former ordinarily requires a defendant to allege and perhaps to demonstrate actual innocence. Appellant had not alleged his innocence but had claimed self defense and did not actually plead guilty. Hence, the judge was in doubt whether there was a necessity for alleging innocence in appellant's case and did not rely on that factor in deciding the motion. The judge noted that several courts and commentators have found the standards virtually indistinguishable. *United States v. Hamilton,* 553 F.2d 63, 66 (10th Cir.), *cert. denied,* 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977); *Del Vecchio v. United States,*

Appellant analogizes his position to that of a defendant seeking to withdraw a guilty plea prior to sentencing, and contends that the motions judge should have applied the "per se prejudice" standard of *McCarthy v. United States*, 394 U.S. 459, 471–72, 89 S.Ct. 1166, 1173–74, 22 L.Ed.2d 418 (1969). However, *McCarthy's* "per se" standard is only available on direct appeal. *United States v. Timmreck*, 441 U.S. 780, 783–84, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979); *Hill, supra* note 7, 368 U.S. at 428, 82 S.Ct. at 471. Since we find no error by the motions judge in ruling that appellant was not denied the effective assistance of counsel, we need not address appellant's contention that the *McCarthy* standard should be applied because appellant would have appealed the NGI plea directly but for the ineffective assistance of counsel.

For purposes of collaterally attacking pleas, insanity acquittees have long been deemed in this jurisdiction to be analogous to defendants who plead guilty. *United States v. Brown*, 138 U.S.App.D.C. 398, 401, 428 F.2d 1100, 1103 (1970). In assessing the Rule 11 violations the motions judge applied a manifest injustice standard, reasoning that "[i]f the process leading to stipulation is to be judged by *Brown* standards—that is, by what is required prior to guilty pleas, then the standard for judging a collateral attack should be no more favorable to the person seeking to vacate the stipulation." The policy interest behind permitting the correction of their pleas is the same. Balancing concerns for finality against concerns for correcting injustice places a limit on relief by collateral attack to cases in which the defendant can demonstrate manifest injustice. *See Timmreck, supra*, 441 U.S. at 784, 99 S.Ct. at 2087–88. Appellant's contention that a lower standard should be applied to committed insani-

ty acquittees because the reason for their commitment, the treatment of their mental illness, is different from the purposes of incarceration upon conviction, is unpersuasive. The policies at issue are not those which surround the curtailment of the individual's liberties, but those which surround scrutinizing the individual's plea and correcting manifest injustice.[8]

Therefore, for purposes of collaterally attacking a NGI plea, we hold that committed insanity acquittees stand in the same position as defendants who seek to withdraw a guilty plea. *See Legrand, supra*, 570 A.2d at 793. Consequently, the same factors are to be considered in connection with a collateral attack on a NGI plea as are considered in connection with a motion to withdraw a guilty plea.

## II.

■ **Rule 11 Violations.** Generally, in a stipulated trial a Rule 11 colloquy is not required because the stipulation is not considered equivalent to a guilty plea. *Glenn v. United States*, 391 A.2d 772, 774–75 (D.C.1978). *See United States v. Strother*, 188 U.S.App.D.C. 155, 160–63, 578 F.2d 397, 402–05 (1978). However, in *Brown, supra*, the United States Court of Appeals for the District of Columbia Circuit noted the importance of Rule 11 values where a defendant has raised the insanity defense:

> While Rule 11 is not applicable here, no reason appears why the Rule 11 procedure of addressing the defendant personally should not be required.... In fact, in this case the need for judicial intervention was greater than in the normal plea of guilty because here the court had before it a defendant admittedly suffering from a mental disorder.

556 F.2d 106, 111 (2d Cir.1977); and NOTES OF THE ADVISORY COMMITTEE ON RULES, *reprinted in* Fed.R.Crim.Proc. 32, 18 U.S.C.A. (1989 Supp.). We need not decide whether the standards are the same since D.C.Code § 24–301(k)(7) provides that relief must first be sought under its provisions before seeking habeas corpus relief.

**8.** Prior to entering into a discussion about appellant's plea, the trial judge, on March 29, 1979,

found appellant competent to stand trial. Appellant did not contest this finding and does not allege any new facts pertaining to his competency in his motion to withdraw his plea. *See Carmichael, supra*, 479 A.2d at 327 (affirming denial of Rule 32(e) motion where trial judge carefully considered psychiatric evaluation and inquired of defendant if he understood nature of plea and right to trial).

138 U.S.App.D.C. at 401, 428 F.2d at 1103. This court, in *Glenn, supra,* interpreted *Brown* to hold that to accept an "appellant's stipulation without inquiry potentially abridged [his constitutional] rights, due to the dispositive nature of the stipulation and to the fact that appellant's mental condition called into question his ability to appreciate the consequences of his acts." 391 A.2d at 775 (citing *Brown, supra,* 138 U.S.App.D.C. at 400, 428 F.2d at 1102 and distinguishing other decisions). The court has recently reaffirmed that Rule 11 precautions must be taken to insure that insanity acquittees act voluntarily with understanding of the consequences of their actions. *Legrand, supra,* 570 A.2d at 792–93. Thus, when advising a defendant who is considering whether to enter an NGI plea, the trial judge must do more than simply advise the defendant that his release might come in a long time or a short time. *Id.* at 794. It must be made clear that the commitment could continue indefinitely. Similarly, the defendant must receive notice that his release could only follow the determination by hospital authorities and the adjudication by the trial judge that the defendant-insanity acquittee no longer posed a danger to himself or others. *Id.*

Necessarily, when reviewing the conduct of the trial court, "matters of reality and not mere ritual, should be controlling." *McClurkin, supra,* 472 A.2d at 1359 (citing *McCarthy, supra,* 394 U.S. at 467–68 n. 20, 89 S.Ct. at 1171–72 n. 20 (citing *Kennedy v. United States,* 397 F.2d 16, 17 (6th Cir. 1968))). Therefore, a plea is involuntary where a defendant does not receive "real notice" of the nature of the charges against him and the consequences of his plea. *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108 (1976). In evaluating whether a defendant has received "real notice," a court may look to the "totality of the circumstances" to determine "whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused." *Id.* at 644, 96 S.Ct. at 2257. *See McClurkin, supra,* 472 A.2d at 1356. Consequently, "[t]he nature of the inquiry required by

Rule 11 must necessarily vary from case to case...." *McCarthy, supra,* 394 U.S. at 467 n. 20, 89 S.Ct. at 1171 n. 20.

Rule 11 concerns can be met by statements made in open court in the presence of the accused, *Sanderlin, supra,* 254 U.S. App.D.C. at 22, 794 F.2d at 731, or statements made to the accused by his counsel, as in *Legrand, supra. See Hicks v. United States,* 362 A.2d 111, 113 (D.C.1976) (defendant conceded understanding maximum sentence through his attorney); *United States v. Cooper,* 233 U.S.App.D.C. 229, 232, 725 F.2d 756, 759 (1984) (attorney advised defendant of maximum sentence). *See also United States v. Vela,* 196 U.S. App.D.C. 317, 319, 606 F.2d 1224, 1226 (1979) (defendant sentenced to minimum sentence so court's failure to advise defendant of maximum sentence was harmless error). A court may also examine the record for admissions by the defendant to support a finding of voluntariness. *McClurkin, supra,* 472 A.2d at 1355–56 (citing *Henderson, supra,* 426 U.S. at 646, 96 S.Ct. at 2258). Further, this court has held that where a plea record does not contain any explanation of the elements of an offense by the trial judge, a defendant can receive real notice of the substance of the charges through other appropriate means, including,

> (1) a representation that counsel has explained to the defendant the elements of the charge which he admits by his plea; (2) stipulations by defense counsel to facts constituting the charge or unexplained element, or (3) a factual proffer by the government that defendant had engaged in a course of conduct which constituted the offense charged or the unexplained element of that offense.

*Id.* at 1356–57. Guided by this precedent and our decision in *Legrand,* we find no grounds for reversal here.

■ In the instant case, the motions judge found that the trial judge did not fulfill his obligation under *Brown, supra,* 138 U.S.App.D.C. 398, 428 F.2d 1100, because he failed to make all of the determinations required by Rule 11. Specifically, he found that the trial judge had failed to

address appellant personally regarding the voluntariness of his stipulation or his understanding of the nature of the offense, and had failed to apprise appellant of the consequences of his stipulation, i.e., the rights that he was waiving by not going to trial.[9] Appellant contends that the motions judge's failure to find that appellant's March 21, 1986, testimony met the "manifest injustice" standard was an abuse of its discretion. The government responds that while the trial judge may not have strictly complied with the literal requirements in Rule 11 when he accepted appellant's stipulation and waiver of jury trial, the record clearly indicates that appellant voluntarily agreed to the stipulation and understood the nature of the charges against him and the consequences of his plea; further, that appellant has failed to demonstrate prejudice as a result of the Rule 11 violations.

The motions judge incorporated the criteria for assessing Rule 11 violations into his review for manifest injustice. He reviewed three factors: whether the Rule 11 violation involved matters of form or substance, *Timmreck, supra,* 441 U.S. at 784, 99 S.Ct. at 2087–88; whether alternative sources of information from the record could be substituted for the trial court's Rule 11 omissions, *McClurkin, supra,* 472 A.2d at 1355–56; and whether the appellant suffered "actual prejudice" in light of the trial court's errors, *United States v. Patterson,* 739 F.2d 191, 194–95 (5th Cir.1984). He found no evidence that appellant was coerced into stipulating to the government's case. The motions judge's findings of fact are supported by the record and not clearly erroneous, and his conclusions are consistent with the heavy burden that rests

with a defendant who seeks to vacate an NGI plea on collateral attack. *See Legrand, supra,* 570 A.2d at 795 (defendant must show "circumstances ... so extreme that they result in a complete miscarriage of justice") (citations omitted).

*First,* the motions judge found several indications that appellant's NGI plea was voluntary and that he understood the consequences of his plea. At the February 1976 hearing, the trial judge told appellant that an NGI plea means a commitment for a period of time to St. Elizabeths Hospital. "You would stay in the hospital until such time as they determine whether you are a danger to yourself or others." Alternatively, the judge told appellant that he could go to trial and the jury would determine whether he did the offense. The judge told appellant that the maximum sentence for the charges was five years, and that it was up to appellant to decide how his case would proceed, it "mak[ing] no difference to me whatsoever you do." Appellant responded that he understood what the judge had said and was pleading not guilty.

At some point after the February hearing, appellant wrote the judge a letter advising of his intention to stipulate to the government's case and enter an NGI plea.[10] The following month, on March 29, 1976, the trial judge found appellant competent to stand trial and suggested that appellant reconsider whether he wanted a trial or to enter an NGI plea, advising appellant that he could be in the hospital for either a long or a short time.[11] The judge also explained how the stipulated trial would proceed. Appellant thereafter stated that he did not want a jury trial and would proceed with an insanity defense; he also signed a form

---

**9.** Appellant maintained that the trial judge should have addressed him personally and explained the nature of a stipulated trial, asked him if he understood and conceded the evidence against him, and asked whether he was aware of his right to trial by jury and his right to confront, cross-examine, and subpoena witnesses.

**10.** Toward the close of the February 1976 hearing, when the trial judge was trying to set a trial date, appellant began exhibiting what the motions judge characterized as "inappropriate behavior." That same day appellant was found

incompetent to stand trial and was returned to St. Elizabeths.

**11.** The motions judge quoted from the transcript of the March 29, 1976, hearing when the trial judge had told appellant:

You go to the hospital for 50 days. You come back and they recommend whether you stay there, be released, be an out-patient or in-patient. They come up with a recommendation. You might be there a long time, a short time. I don't know how long, that might be decided in a couple of months.

waiving his right to a jury trial. Although the judge did not inquire directly at the March 29 hearing whether appellant's change of heart was voluntary, the judge referred to the letter before asking appellant what he wanted to do and accepted his statement that he wanted to proceed with an insanity defense. Appellant did not deny writing the letter nor then allege that his plea was coerced.

Appellant maintained at the motions hearing that he was generally confused about what took place before the trial judge. He testified that he had the idea he could be released from St. Elizabeths within a year. The transcript of the trial proceedings revealed no such representations by the trial judge. Appellant also testified that he thought that he could complete his GED within a year which would demonstrate to the hospital that he was ready to be released. Appellant's testimony suggested, however, that he understood the role of the hospital in effecting his release and that the trial judge also had a role in determining whether he would be released from the hospital. Appellant's responses to the motions judge's questions make clear that although appellant may have hoped to be released from the hospital within a year, he understood that it was possible this might not happen, both because it might take more than a year to complete his GED and because the hospital authorities had to determine whether release would be appropriate. Although appellant testified that he hoped to impress hospital authorities by attaining his GED, he acknowledged that he looked to the trial judge to "get [him] out" of the hospital.

Further, the motions judge noted that appellant admitted that his defense attorney had advised him on two different occasions against stipulating to the government's case because the attorney thought appellant could win his case on the merits.

Nevertheless, appellant decided to do otherwise. In addition, the motions judge found that the trial judge had informed appellant at both the February and March hearings of some of the consequences of raising an insanity defense. The trial judge told appellant that he could be committed "for a long time, a short time. I don't know how long;" that he would remain in the hospital until they determined he was no longer a danger to himself or others; and that an NGI plea meant a commitment for a period of time to St. Elizabeths Hospital.

Under the totality of circumstances, the motions judge concluded that appellant had acted voluntarily in entering a NGI plea. Although the trial judge failed specifically to advise appellant that he could be held at St. Elizabeths indefinitely, the motions judge concluded from the trial transcript and appellant's testimony that appellant understood that he could be held indefinitely, but hoped to be released within a year. Moreover, the motions judge noted that appellant had never alleged coercion or promises by the government or that, if the trial judge had inquired, he would have revealed instances of threats or coercion. Thus, appellant had failed to show prejudice as a result of the Rule 11 omissions. Accordingly, the motions judge concluded that appellant had failed to prove actual prejudice as a result of the trial judge's failure to be more explicit.[12]

*Second,* the motions judge found that appellant was given real notice as to the nature of the charge against him and the consequences of his plea. At the March 1976 hearing, the government proffered what it would prove at trial. Appellant's counsel, in appellant's presence, stated that the proffered facts would constitute the offense charged. The motions judge considered the assault charge simple to understand and that the trial judge's colloquy with appellant's counsel was adequate, for

12. The motions judge recognized that appellant may have been incompetent at the time the trial judge advised him in February of the maximum penalties for assault on a police officer. But the judge was satisfied that appellant understood the advice about an NGI plea, and a stipulated trial, since the psychiatric report indicated that while appellant lacked a "rational understanding" of the proceedings against him, he did possess a "factual understanding" of them. Further, since appellant was found competent at the March hearing, he was able, the motions judge found, to understand essential information about penalty alternatives.

purposes of appellant's collateral attack, to substitute for a direct colloquy with appellant. The judge further observed that appellant had not alleged that the trial judge's failure to inquire into his understanding of the charges had influenced his decision to stipulate to the facts on March 29.

Our decision in *Legrand, supra,* makes clear that the trial judge's advice regarding the length of time appellant could remain in custody under an NGI plea was not all it should have been. 570 A.2d at 792. Nevertheless, in *Legrand* the court held that the defendant had failed to demonstrate manifest injustice to justify the withdrawal of his NGI plea since his attorney had fully advised him of the consequences of his plea, thereby overcoming the deficiencies in the trial judge's incomplete and partially erroneous advice. *Id.* at 793. Appellant's counsel was unavailable to testify at the motions hearing.[13] However, unlike *Legrand,* where the proceedings occurring ten years earlier had to be reconstructed based on present memories of the defendant and his counsel, the motions judge had the benefit of the trial transcript. That transcript shows that appellant made a series of appearances before the trial judge and engaged in a series of discussions with his defense attorney when the subject at issue was whether or not appellant should enter an NGI plea. The trial judge was explicit in his advice to appellant that the length of detention was impossible to predict. In addition to this advice, which appellant received from the trial judge after he was found competent to stand trial, that he could remain in custody for a long time or a short time, his defense attorney twice advised appellant against entering a plea.[14] Appellant's testimony was at best vague about the alleged promise that the trial judge had made that he could be out in one year and is without any record support. Furthermore, his testimony regarding what he anticipated as a result of obtaining a G.E.D. is consistent with the motions judge's finding about appellant's expectations upon entering an NGI plea. The trial judge told appellant that he would come back to court, the hospital would make a recommendation, and that the judge could not predict whether appellant would be there a long or a short time. It also supports the motions judge's finding that the representations of the judge were adequate to convey to appellant that he would remain at Saint Elizabeths indefinitely.

*Third,* the motions judge was satisfied that the trial judge had conducted an adequate inquiry regarding appellant's waiver of his right to a jury trial, and that the failure to advise appellant about giving up his right to confront and cross examine witnesses "is not critical enough to cause a fundamental defect in a Rule 11 procedure, especially where the defect is being alleged on collateral attack." *United States v. Morrison,* No. F8133–75 (June 19, 1986) (unpublished order at 22) (citing *cf. United States v. Dayton,* 604 F.2d 931, 939–40 (5th Cir.1979) (post *McCarthy* additions to Rule 11 are not "core" considerations underlying guilty plea); *Patterson, supra,* 739 F.2d at 194–95). In any event, the motions judge noted that appellant had failed to allege and prove actual prejudice because of the trial judge's errors, observing that appellant "has not even suggested to the Court that if he had been apprised of his trial rights on March 29, he would have gone to trial rather than stipulate."

Accordingly, considering the record as a whole, we find no error by the motions judge in concluding that appellant has failed to demonstrate manifest injustice requiring vacation of his NGI plea. The motions judge applied the correct legal standard and his findings of facts are supported by the record and not clearly erroneous. Although the judge acted before our

---

**13.** The motions judge relied on appellant's testimony and the representations of both counsel that appellant's trial attorney was presumed to be dead.

**14.** It would appear likely, given the course of proceedings before the trial judge, that consider-ation of the length of appellant's incarceration was not mentioned by his attorney. The motions judge made no finding to this effect, however, and, consequently, we do not rely on this consideration.

decision in *Legrand, supra,* 570 A.2d 786, the considerations deemed relevant there, in proceedings before the same trial judge, were addressed by the motions judge.

Accordingly, the judgment is affirmed.[15]

---

15. Appellant also seeks to appeal from the denials of his 1988 motions to vacate his insanity plea and to reconsider the denial of his motion to vacate. Since he failed to file a notice of appeal from either of these orders, this court is without jurisdiction. *Brown v. United States,* 379 A.2d 708 (D.C.1977). His reliance on *Butler v. United States,* 388 A.2d 883, 885 (D.C.1978), and *Fallen v. United States,* 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964), is misplaced since appellant was represented by counsel in connection with his motion to vacate and motion to reconsider.