**Anthony WALLS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–1352.**

District of Columbia Court of Appeals.

Argued Oct. 4, 1991.
Decided Dec. 20, 1991.

Laurie B. Davis, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief for appellant.

Barry Wiegand, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and John M. Facciola, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and WAGNER, Associate Judges.

ROGERS, Chief Judge:

The principal issue in this appeal is whether a defendant committed to Saint Elizabeths Hospital in 1974, as a result of a not guilty by reason of insanity plea to simple assault, has demonstrated manifest injustice by reason of errors by the trial judge and trial counsel entitling him to vacation of his plea and unconditional release under D.C.Code § 24–301(k) (1989

1. I join the other portions of the majority opinion.

Repl.). Appellant Anthony Walls contends that the finding by the motions judge that he has not been prejudiced is untenable and unsupported by the record. He contends, more specifically, that but for such errors he would have pleaded guilty with one of two consequences: (1) he would have waived the insanity defense and if found guilty, served a maximum sentence of one year of incarceration, followed by resumption of his 1972 civil commitment, or (2) the trial judge would have imposed an insanity defense, followed by a jury trial (on mental illness and dangerousness), under D.C.Code § 21–545 (1989 Repl.), which at worst would have resulted in a civil—not criminal—commitment paralleling his 1972 commitment. Accordingly, appellant maintains that he has been committed indefinitely, without a jury trial, and with the extra burdens of a criminal commitment which he need not have received if properly advised under Super.Ct.Crim.R. 11.

The motions judge denied appellant's motion for release from his criminal commitment, concluding that appellant had not been prejudiced by any alleged error because he would have been committed to the Hospital indefinitely in 1974 even if he had pleaded guilty to the assault charge. That, however, is not necessarily true. If appellant had pleaded guilty to assault in 1974 and the court had imposed an insanity defense, he would have been entitled to a jury trial on mental illness and dangerousness and either found eligible for release or, at worst, continued his commitment as a civil committee. If, on the other hand, the court had accepted his guilty plea, appellant would have resumed his 1972 civil commitment after no more than one year of incarceration for assault and thus would have been spared any criminal commitment.

Furthermore, because of the 1987 decision in *Streicher v. Prescott*, 663 F.Supp. 335 (D.D.C.1987), nullifying the civil commitments of the class of pre–1973 civil committees because their commitments had been based on a preponderance of the evidence and not clear and convincing evidence, the difference in consequences between a civil and criminal commitment became even more significant. Especially after *Streicher v. Prescott*, appellant's prejudice is clear: because of his not guilty by reason of insanity plea in 1974, resulting in a criminal commitment under D.C.Code § 24–301(d), he failed to receive a new civil commitment proceeding with a jury trial on mental illness and dangerousness, a trial to which he eventually would have been entitled under *Streicher v. Prescott* as a result of an imposed insanity defense. Accordingly, we reverse.[1]

### I

Appellant Walls was civilly committed to St. Elizabeths Hospital on October 20, 1972. D.C.Code §§ 21–521 to –528 (1989 Repl.). On December 31, 1973, while on a holiday pass, he was arrested for assaulting a drugstore clerk. He was thereafter charged with one count of simple assault. Following a competency and productivity examination at the Hospital, he was found competent to stand trial on March 11, 1974, and pleaded not guilty and demanded a jury trial.

On April 12, 1974, appellant's case was assigned to Judge William S. Thompson for trial. The prosecutor advised the judge that defense counsel had entered into an oral stipulation regarding the government's case, and that the defense would be insanity.[2] After hearing the stipulated facts,[3]

---

1. In view of our disposition, we do not reach appellant's claim of ineffective assistance of trial counsel.

2. The trial court docket does not indicate that appellant was present. However, a previous docket entry on April 9, 1974, indicates that the case was continued to April 12, 1974, because appellant had not been brought up from the Hospital. Other docket entries indicate that the proceedings were continued whenever appellant

was not present, or when his presence was not waived.

3. The stipulated facts were that appellant had made some purchases in a drug store, and then asked for change of one dollar. However, when the clerk reached for the bill, appellant refused to release it. The clerk then asked for the next customer to approach the register, and appellant "lunged across the counter and struck the complainant in the front left portion of the head, just about the left eye. The complainant

the judge heard testimony from a psychologist, Dr. Maher.[4] The doctor read from the Hospital's report, stating that appellant was mentally ill, his "judgment and behavior controls were strenuously impaired," and, in response to the judge's question, that the alleged offense was the product of the mental illness.[5] Following this brief testimony—one transcript page—the judge found appellant not guilty because of reason of insanity, and appellant was committed to the Hospital. A series of *Bolton*[6] hearings were subsequently held over the years. D.C.Code §§ 24–301(d)(2) & (k) (1989 Repl.).

On August 21, 1989, the clerk's office of the Superior Court received a letter written by appellant which was filed as a *pro se* motion for release pursuant to D.C.Code § 24–301(k). New counsel appointed to represent appellant subsequently filed a memorandum in support of the motion, to which was attached appellant's affidavit. Contending that appellant had been denied due process, counsel maintained that the insanity acquittal was the result of ineffective assistance of counsel, and that the insanity plea was invalid because the trial judge had failed to inquire whether the plea was voluntary and made with an understanding of its consequences, citing *United States v. Brown*, 138 U.S.App.D.C. 398, 428 F.2d 1100 (1970), as adopted by this court in *Glenn v. United States*, 391 A.2d 772, 774–76 (D.C.1978).

The motions judge denied the motion, finding first, that although appellant's affidavit stated that his trial counsel had failed to inform him fully about the consequences of his plea of not guilty by reason of insanity (and this could not be rebutted by the government since trial counsel had died), and assuming appellant would not have entered that plea but pleaded guilty, as he asserted he would have, appellant had failed to show prejudice under *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). The judge noted that appellant was already civilly committed when the assault occurred in 1973, and that he did not claim he had not committed the assault or that he did not have a valid insanity defense. Accordingly, the motions judge concluded that had appellant not pleaded not guilty by reason of insanity, either he would have been convicted after a waiver of the insanity defense and served a maximum sentence of one year's incarceration "followed by a return to civil commitment," or the trial judge would have imposed the insanity defense "followed by a return to civil commitment...." While the process of commitment might have been different,[7] and the process for release is different,[8] the judge found that "there is little probability here that the *result* would have been" (emphasis in original) (citing *Jones v. United States*, 463 U.S. 354, 363 n. 11, 103 S.Ct. 3043, 3049 n. 11, 77 L.Ed.2d 694 (1983) ("the basic standard for release is the same under

suffered a concussion with multiple abrasions and about the neck."

4. Dr. Maher was never qualified or accepted as an expert witness. The prosecutor and trial judge referred to him as a psychiatrist, but a "judicial proceedings work sheet" dated April 12, 1974, and signed by Dr. Maher, indicates that Dr. Maher was a psychologist. That work sheet also states that Dr. Maher had spoken to pts [patient's] attorney before trial, indicating my doubt that an insanity defense was in pt's best interest, considering the nature of his illness and the relative lightness [?] of the charge. He, however, seemed more concerned in the public's well being than his pts (my value judgment), and proceeded with an uncontested insanity defense.

5. Dr. Maher explained that appellant had been on a very high dose of medication in order to give him "even a minimal amount of control,"

but that "he has a less than average amount of impulse control; and he is on so much medication that if any of us were on half of it, we wouldn't be able to open our eyes; but he manages quite well on this medication and is certainly not slowed down excessively." The doctor also referred to appellant's other assaultive behavior toward patients at the hospital.

6. *Bolton v. Harris*, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968).

7. *Compare* D.C.Code § 24–301(d)(1)–(2) (criminal commitment) *with* § 21–545(b) (civil commitment).

8. *Compare* D.C.Code § 24–301(e) (criminal) *with* §§ 21–546–548 (civil).

either civil commitment or commitment following acquittal by reason of insanity")). Thus, the judge concluded, in view of appellant's failure to obtain unconditional release at *Bolton* hearings held throughout the years, appellant "would have been committed to [the Hospital] from 1974 to the present."[9]

Turning to the alleged errors by the trial judge, the motions judge concluded that "a majority of the concerns embodied in Rule 11 were left unaddressed." Although satisfied from the "totality of circumstances"[10] that appellant had received "real notice of the nature of the charges against him,"[11] the motions judge could not conclude that appellant also had real notice of the consequences of his plea. The judge found that "the trial judge failed to fulfill his obligations under *Brown* [, supra, 138 U.S.App.D.C. 398, 428 F.2d 1100,] because he failed to make the determinations required by Super.Ct.Crim.R. 11." But, referring to her prior analysis of prejudice, the motions judge found none since "the end result would have been identical: the defendant would have been committed to St. Elizabeths Hospital from 1974 to the present under essentially identical conditions."

## II

█ It is undisputed that the trial judge in 1974 failed to comply with Rule 11 requirements when he accepted appellant's plea of not guilty by reason of insanity. In 1974 Rule 11 required that before accepting a plea, the judge shall inquire personally of the defendant whether "the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." *Bettis v. United States*, 325 A.2d 190, 193 (D.C.1974) (quoting Rule 11); *see Brown, supra,* 138 U.S.App.D.C. at 401–02, 428 F.2d at 1103–04 ("We hold that where a defendant in a criminal case seeks to waive trial on all issues except insanity the trial judge should address the defendant personally in determining whether the waiver is made voluntarily with understanding of the consequences of his act." (footnote omitted)). *See also Morrison v. United States,* 579 A.2d 686, 691 (D.C. 1990); *Legrand v. United States,* 570 A.2d 786, 793 (D.C.1990).[12] The trial transcript reveals no inquiry at all by the trial judge of appellant before accepting his plea.[13] The requirement that the judge ascertain whether the defendant understands the consequences of the plea is one of the "core concerns" of Rule 11. *Gaston v. United States,* 535 A.2d 893, 895 (D.C. 1988).

█ What is disputed is whether appellant has demonstrated manifest injustice. *See Morrison, supra,* 579 A.2d at 689–90 (applying manifest injustice standard to

9. The motions judge rejected appellant's claim that he suffered prejudice as a result of being housed in the criminal division rather than the civil division of the Hospital as being "speculative at best," noting that as a civil patient he might well have been housed in the criminal division because of his assaultive behavior at the Hospital, citing Hospital Policy No. 50000.-523.6. We do not reach this issue.

10. *See McClurkin v. United States,* 472 A.2d 1348, 1356 (D.C.1984) (citing *Henderson v. Morgan,* 426 U.S. 637, 644, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976)), *cert. denied,* 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984).

11. *Henderson v. Morgan, supra* note 10, 426 U.S. at 645, 96 S.Ct. at 2257 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)).

12. The government argues that *Legrand* should not be given retroactive effect because it an-

nounced a new rule of criminal procedure and depends for its conclusion on *Jones, supra,* 463 U.S. 354, 103 S.Ct. 3043. In *Legrand,* the court stated that it is "imperative for the judge who accepts the plea of not guilty by reason of insanity to ensure that the defendant understands fully and in some detail exactly what can happen to him and for how long, if the plea is accepted and he is adjudicated accordingly." 570 A.2d at 792. As the motions judge recognized, *Brown, supra,* 138 U.S.App.D.C. at 401–02, 428 F.2d at 1103–04, was binding authority when appellant pleaded not guilty by reason of insanity. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C. 1971).

13. Appellant had previously been found competent to stand trial, but he was never determined to be competent to enter a plea. *See Hunter v. United States,* 548 A.2d 806, 810 (D.C.1988); *Willis v. United States,* 468 A.2d 1320 (D.C.1983); *see also Frendak v. United States,* 408 A.2d 364, 378 (D.C.1979).

withdrawal of plea of not guilty by reason of insanity); *Legrand, supra,* 570 A.2d at 792 (same). The government argued in the trial court that the prejudice which appellant must show to demonstrate manifest injustice is that but for the defects in the process that led to his not guilty by reason of insanity plea in 1974, he would not have entered the plea and been indefinitely confined beyond the maximum length of the sentence for assault. Since, the government maintained, appellant's indefinite confinement stems from the seriousness of his mental illness and not the difference in procedural protections afforded to a civil rather than an insanity acquittee, he had shown no prejudice. Further, the government continued, appellant can show no prejudice because the standard for release is dependent on proving by a preponderance of the evidence that he is no longer dangerous to himself or others, and there is nothing in the record to suggest that appellant would have been unconditionally released at any time.

The motions judge's reasoning was different from the government's: in 1974 appellant would have been involuntarily committed to the Hospital for an indefinite period regardless of what happened to the criminal charge since he had been civilly committed in 1972 and his record of conduct at the Hospital did not indicate that he was entitled to unconditional release. On appeal, the government repeats the argument that it made in the trial court and maintains that even in the absence of the 1972 commitment, because the record indicates that appellant would have been civilly committed by a jury in 1974, he has failed to show prejudice.

The motions judge correctly concluded that the standard for release is the same, regardless of whether a person is civilly committed or committed following the imposition of an insanity defense by the trial court or committed after pleading not guilty by reason of insanity.[14] *Jones, supra,* 463 U.S. at 356–59, 363 n. 11, 103 S.Ct. at 3045–47, 3049 n. 11; *Dixon v. Jacobs,* 138 U.S.App.D.C. 319, 427 F.2d 589 (1970); D.C.Code §§ 21–546, –547 (civil), 24–301(k)(3) (criminal NGI). There is, however, a vast difference in the procedure for initial commitment. *See Sanderlin v. United States,* 254 U.S.App.D.C. 18, 23, 794 F.2d 727, 732 (1986) ("A person who is civilly committed is thus afforded greater protections against unwarranted confinement than someone who relies on the NGI defense."). As pointed out in the memorandum in support of appellant's *pro se* motion, the civil committee has the right to a jury trial on the questions of mental illness and dangerousness, D.C.Code §§ 21–525 to –545, whereas the criminal acquittee, who has entered a plea of not guilty by reason of insanity, is committed without a prior hearing and within fifty days, and every six months thereafter, is entitled only to a bench trial at which he, and not the government, bears the burden of proof. D.C.Code § 24–301(d)(2) & (k).[15] The motions judge properly agreed on the statement of law in appellant's memorandum in support of his *pro se* motion, but relied on her factual findings that "there is no significant distinction between what

---

**14.** The court must affirm the factual findings of the motions judge if they are supported by the record and not clearly erroneous; our review of questions of law is *de novo. See* D.C.Code § 17–305 (1989 Repl.).

**15.** Counsel for appellant maintained that but for trial counsel's errors, even assuming an insanity acquittal over appellant's objection (*i.e.,* an imposed insanity defense), the result would have been different because appellant, who would have pleaded guilty, could be released "at the unfettered discretion of the hospital staff [as opposed to] ... only by the committing court which has broad discretion in conducting *de novo* review of any hospital-sponsored release recommendations," citing *DeVeau v. United States,* 483 A.2d 307, 313–16 (D.C.1984). Counsel noted, however, that the trial judge could have declined to impose an insanity defense over appellant's objection because the judge could have concluded that appellant's decision was "quite rational" in view of the contrasting lengths of confinement associated with simple assault and an insanity acquittal. The memorandum stated that appellant had been incarcerated for three months and therefore faced only nine months additional incarceration had he pleaded guilty. Counsel further argued that as a criminal acquittee, appellant was subject to the more restrictive conditions at John Howard Pavilion.

could have been—the defendant's civil commitment—and what was—his criminal commitment," noting that appellant did not claim that he was not mentally ill either at the time he was civilly committed in 1972 or at the time he pleaded not guilty by reason of insanity, and that he had not been found eligible for unconditional release.

Most of the motion judge's factual analysis of the alternatives facing appellant in 1974 is supported by the record and not clearly erroneous. However, the judge's conclusions do not follow from those findings. Based on the assertion in appellant's motion memorandum that he would have pleaded guilty to assault if he had understood the consequences of the plea of not guilty by reason of insanity, he would have faced two options.[16] Either he would have pleaded guilty to the assault charge in 1974 and, after waiving the insanity defense, been confined for no more than the maximum sentence for assault, one year, and then returned to civil commitment status under the 1972 commitment, and thus spared any criminal commitment, or he would have pleaded guilty, the trial judge would have imposed an insanity defense, and appellant would have been entitled to the benefit of the procedures for civil commitment, including a jury trial on mental illness and dangerousness, and either found eligible for release or, at worst, continued his commitment as a civil, and not a criminal, committee. *See Lynch v. Overholser,* 369 U.S. 705, 719–20, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211 (1962) (where court imposes insanity defense, automatic commitment procedure of D.C.Code § 24–301(d) does not apply, and commitment must be accomplished by civil commitment procedures of Title 21 of the D.C.Code); *see also Frendak, supra* note 13, 408 A.2d 364 (new criteria for imposing insanity defense, unlike *Whalem v. United States,* 120 U.S.App.D.C. 331, 337, 346 F.2d 812, 818 (en banc), *cert. denied,* 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965)).

The significance of the different consequences of a civil and criminal commitment became even greater, however, with the decision in *Streicher v. Prescott, supra,* 663 F.Supp. 335. *Streicher v. Prescott* had the effect of nullifying appellant's 1972 commitment.[17] But, because of his 1974 not guilty by reason of insanity plea, he was a criminal committee, indefinitely confined, and, therefore, despite *Streicher v. Prescott,* he failed to receive a new civil commitment. Under *Streicher v. Prescott,* appellant would have been entitled to the appointment of new counsel and a completely new civil commitment proceeding before a jury, at which the government would have had the burden to show by clear and convincing evidence that appellant required hospitalization as the least restrictive alternative.[18] Consequently, in analyzing what could have happened to appellant had he been properly advised under Rule 11 by the trial judge, no reliance can be placed on appellant's 1972 civil commitment in determining whether he has failed in 1991 to show prejudice. As of 1987, in the absence of his criminal commitment, appellant would have been entitled to a jury trial before being further detained by the Hospital.

Contrary to the implication of the government's argument, this court cannot find that a jury would have civilly committed appellant after the 1974 criminal proceedings, and the motions judge made no

---

16. Appellant does not claim that after waiving the insanity defense, the trial judge would have rejected his not guilty plea and he would have been found not guilty of the assault charge.

17. *Streicher v. Prescott* was a class action lawsuit brought by persons civilly committed prior to 1973. The judge held that because persons civilly committed before 1973 had been committed based on a preponderance of the evidence, and the Supreme Court had held in *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), that a clear and convincing evidence standard was required, persons in the class were entitled to the appointment of counsel and a new commitment proceeding before a jury. *Streicher v. Prescott, supra,* 663 F.Supp. at 345. The government does not claim that appellant is not within the *Streicher v. Prescott* class.

18. Contrary to the motions judge's finding, appellant did not concede in his memorandum filed by counsel that after serving time upon conviction of assault following his guilty plea, he would be returned to the Hospital as a civil committee.

such finding. Because of the trial judge's failure to fulfill the requirements of Rule 11, appellant has been indefinitely confined, without a jury trial, subject to a criminal commitment (including different release conditions). *See Legrand, supra,* 570 A.2d at 793 (applying analysis similar to Rule 11 in addressing inquiry involving not guilty by reason of insanity plea); *Brown, supra,* 138 U.S.App.D.C. at 401, 428 F.2d at 1103. Absent a civil commitment by a jury, he was entitled to be released, *see Streicher v. Prescott, supra,* 663 F.Supp. 335, and he, therefore, has shown manifest injustice. *See supra* p. 57. Accordingly, the order denying appellant's motion to vacate his plea of not guilty by reason of insanity and for unconditional release is reversed, and the case is remanded to the trial court to vacate the plea.[19]

---

**19.** Appellate counsel acknowledged at oral argument that appellant can be lawfully confined by the Hospital after vacation of his plea and unconditional release under D.C.Code § 24–301(d) for the period required by the Hospital to initiate civil commitment proceedings. *See* D.C.Code § 21–521 (emergency hospitalization); *In re Feenster,* 561 A.2d 997, 1000 (D.C.1989).